**STATE of Minnesota, Respondent,**

v.

**Gregory A. BURNS, Appellant.**

**No. C3-85-2330.**

Court of Appeals of Minnesota.

July 15, 1986.

Review Granted Sept. 22, 1986.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for State.

C. Paul Jones, Public Defender, Anne McDiarmid, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Gregory Burns was convicted of first degree intrafamilial sexual abuse, Minn.Stat. § 609.3641, subd. 1(1)(1984), and second degree intrafamilial sexual abuse, Minn.Stat. § 609.3642, subd. 1(1)(1984), for conduct involving his two-year-old daughter and was sentenced on the first offense to imprisonment for 76 months.[1] Burns contends that the trial court erred in admitting the child's out-of-court statements and that the evidence is insufficient to sustain his convictions. We reverse and remand.

## FACTS

Gregory Burns and Lynn Splittstoesser lived together for four to five years and had one daughter, C.B., born February 26, 1982. They separated in September 1984, but Burns continued to visit with C.B. regularly.

On February 1, 1985, Burns picked up C.B. around 11:00 a.m. He and C.B. spent the day with Burns' girlfriend and her four-year-old son. Burns brought C.B. back to Splittstoesser's mother's home around 4:30 p.m. Splittstoesser arrived at her mother's home about 11:30 p.m. and she and C.B. then returned home. While they were sitting on the sofa, C.B. said, "ow, my butt." In response to Splittstoesser's questions, C.B. said her daddy had put his finger in it. C.B. also mumbled that she had touched daddy's "butt". Splittstoesser testified that she then stopped asking questions because C.B. became nervous and scared.

The next evening upon further questioning by Splittstoesser, C.B. demonstrated with one of her dolls what had happened. C.B. took off the doll's dress, pulled down

its pants and said Burns put his finger in her butt. C.B. said she asked her daddy to stop and he did.

The next morning C.B. was taken to the Children's Hospital for a medical examination. Dr. Jean Ebrahimi, who had been informed that the presenting complaint was child sexual abuse, examined her. C.B. would not talk with Dr. Ebrahimi about the events leading to her hospital visit. Dr. Ebrahimi testified that based on the physical examination her findings were consistent with sexual abuse. That evening while watching television C.B. told her mother that "my daddy eats my boobies up." She demonstrated by taking off her pajama top and rubbing her breasts with her fingers.

Following a report of alleged sexual abuse, Ramsey County Human Services Social Worker Darilyn Romanowski interviewed C.B. C.B.'s mother remained in another room. C.B. identified both the genital and rectal parts of an anatomically correct doll as the "butt." In demonstrating what occurred, C.B. rubbed her finger outside the doll's clothes on the vaginal area. C.B. was asked how she was dressed and she took off the doll's dress and panties and put her index finger inside the vagina. She also touched the doll's breasts and buttocks after Romanowski asked if Burns had touched her anywhere else. C.B. then placed the male doll's lips on the female doll's breasts. C.B. told Romanowski this happened at daddy's house in the bathroom.

Romanowski left and returned to take C.B. and her mother to the police department. St. Paul Police Sergeant Lisa Millar interviewed C.B. C.B.'s mother and Romanowski were present but remained silent and offered no assistance. C.B. told Millar

---

1. This was the second trial in this case. Approximately one week after the first trial the prosecuting attorney was first advised by the St. Paul Police Department that, in addition to being examined by Dr. Jean Ebrahimi, C.B. had been examined by Dr. Carolyn Levitt of the Children's Hospital staff. The defense moved for a new trial based on newly discovered evidence and in an order dated June 5, 1985, the trial court granted the motion. In its accompanying

memorandum the trial court noted: "Dr. Levitt was supportive of the examination and the conclusions of Dr. Ebrahimi, but Dr. Levitt also testified [at a post-trial hearing] that based upon her examination and the history which she took from the victim's mother she could not arrive at a conclusion of whether or not [C.B.] had been sexually abused." Dr. Levitt's report was apparently not considered at the second trial.

that her butt got hurt when she was at her daddy's house, and he touched it with his fingers. C.B. demonstrated what happened with anatomically correct dolls. She undressed the female doll and rubbed the rectal and vaginal area, stating that daddy had also touched her "butt" there. C.B. then took the male doll, took down its pants and touched the penis, telling Millar she touched daddy's butt like that.

At trial C.B. did not testify because of her young age. Her hearsay statements to her mother, Romanowski and Millar were admitted. Burns testified and denied touching C.B. sexually. He claimed he was with his girlfriend and her four-year-old son while he was caring for C.B. on February 1. Burns also claimed he had no opportunity to commit the alleged offense. Burns' sister and girlfriend also testified. Both corroborated Burns' testimony.

## ISSUES

1. Did the trial court err in admitting C.B.'s hearsay statements pursuant to Minn.Stat. § 595.02, subd. 3 (1984) without conducting a hearing and making findings?

2. Is the evidence sufficient to sustain appellant's convictions?

## ANALYSIS

The trial court admitted C.B.'s hearsay statements made to her mother, Darilyn Romanowski and Sergeant Millar. These statements were purportedly admitted under Minn.Stat. § 595.02, subd. 3 (1984), which provides:

**Certain out-of-court statements admissible.** An out-of-court statement made by a child under the age of ten years alleging, explaining, denying, or describing any act of sexual contact or penetration performed with or on the child by another, not otherwise admissible by

statute or rule of evidence, is admissible in evidence if:

(a) the court or person authorized to receive evidence *finds, in a hearing conducted outside of the presence of the jury*, that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; *and*

(b) the child either:

(i) testifies at the proceedings; or

(ii) is unavailable as a witness and there is corroborative evidence of the act * * *.

(Emphasis added.)

The record shows that the trial court admitted the hearsay statements under the guise of this statute but complied with none of the statute's requirements. The only comment the trial court made about section 595.02, subd. 3 requirements was as follows:

[T]he Court would rule that in the event it is determined that the persons to whom the alleged statements were made are persons of or are reliable persons and surrounding circumstances provide indicia of reliability, the Court will admit such alleged hearsay statements.

Clearly, the statute requires more than a mere recitation of its elements. *See State v. Carver,* 380 N.W.2d 821, 826 (Minn.Ct. App.1986), *pet. for rev. denied,* (Minn. Mar. 27, 1986).

Section 595.02, subd. 3 provides by legislative enactment an exception to the hearsay rule. The statute reflects a legislative concern with the inherent difficulties in prosecuting those who abuse young children. However, the statute also reflects a concern for the accused's sixth amendment right to confrontation.[2]

**2.** The State argues that Burns did not object on constitutional grounds at trial and therefore waived the issue for appeal. In this case, however, Minn.Stat. § 595.02 and the constitutional right to confrontation are so closely interrelated that we will consider the issues together. The record does not show that Burns specifically requested a hearing pursuant to section 595.02

or that he objected to the trial court's failure to rule on the reliability of the testimony. Nevertheless, section 595.02, subd. 3 does not require that a defendant request the hearing, because the hearing is mandated by statute. Further, claims of error not properly raised at trial may still be reviewed on appeal if the error is "plain

The sixth amendment confrontation clause and the Minnesota State constitution both provide that: "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S. Const. amend. VI; Minn. Const. art. I, § 6. This clause has not been read literally to exclude all hearsay. In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the United States Supreme Court enunciated the conditions that must exist for the admission of hearsay statements to comply with the mandates of the confrontation clause. The Court stated:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* at 66, 100 S.Ct. at 2539 (footnote omitted).

■ The child sexual abuse exception is not a "firmly rooted exception" to the hearsay rule and therefore particularized guarantees of trustworthiness are required. *See State v. Ryan*, 103 Wash.2d 165, 170, 691 P.2d 197, 202 (1984). Section 595.02, subd. 3 specifies the procedure to be followed to ensure that the constitutional requirements set out in *Ohio v. Roberts* are met. *State v. Bellotti*, 383 N.W.2d 308, 314–16 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Apr. 24, 1986).

The requirements of the statute are clear and unequivocal and in no way suggest that the required hearing or findings are discretionary. This court recently stated:

> The statute conditions the admissibility of a child's hearsay statement on a finding of sufficient indicia of reliability. * * This statutory requirement, together

with the obvious danger of unfair prejudice to the defendant if hearsay testimony is later found inadmissible, mandates that a hearing be conducted before such testimony is presented to the jury.

*Carver*, 380 N.W.2d at 826. The South Dakota Supreme Court, interpreting an identical statute, cautioned:

> It is vitally important that prior to admission of a declarant's statement under this hearsay exception, the trial court must determine that the statement bears sufficient indicia of reliability. It is also imperative that the determination be made on the record, outside the presence of the jury.

*State v. McCafferty*, 356 N.W.2d 159, 163–64 (S.D.1984). *See also State v. Slider*, 38 Wash.App. 689, 697, 688 P.2d 538, 543 (1984), *rev. denied*, (Wash. Jan. 18, 1985).

In *Carver*, 380 N.W.2d 821, the trial court also failed to hold the requisite hearing and make findings under section 595.-02, subd. 3(a). At some point during the trial, however, the trial court did make a ruling that the hearsay testimony was admissible. This court found that the failure to hold the required hearing was error. *Id.* at 826. In relation to the charges involving two of the children the error was found not to be reversible because the children testified at trial and were available for cross-examination. *Id.* at 825–26. The admission of the hearsay statements of two other children was found to be reversible error because there were not sufficient indicia of reliability. *Id.* at 826. These children, like C.B. here, did not testify at trial.

■ The record before us reveals nothing about the indicia of reliability the trial court considered. Nor does it indicate whether the trial court evaluated the reliability of the hearsay testimony before allowing its admission. Allowing the jury here to consider hearsay testimony without the least inquiry into its reliability clearly violates section 595.02, subd. 3 and the confrontation clause guarantees as enunciated in *Ohio v. Roberts*.

Under the facts here present the trial court's failure to comply with section 595.-

error affecting substantial rights." *State v. Ma-* *laski*, 330 N.W.2d 447, 451 (Minn.1983).

02, subd. 3 was reversible error and a new trial is necessary.

## DECISION

It was reversible error for the trial court not to conduct a hearing under Minn.Stat. § 595.02, subd. 3 before admitting hearsay testimony.

Reversed and remanded.

LANSING, J., dissents.

LANSING, Judge (dissenting).

I respectfully dissent. The defendant has been convicted by two different juries of sexually abusing his daughter. The majority orders a third trial in this case because the trial court failed to hold the hearing required by Minn.Stat. § 595.02, subd. 3 (1984 & Supp.1985), even though the defendant failed to object to the absence of a hearing. In addition, the majority finds the record "reveals nothing about the indicia of reliability the trial court considered." Any inadequacy in the record is directly attributable to the defendant's failure to raise the issue before the trial court.

The defendant never contended the statements were unreliable at trial. He objected to the statements solely on the basis that the witness was not unavailable within the meaning of the statute.[1] The trial court admitted the hearsay statements without objection as to their reliability. The fact that the hearing is "mandated by statute" is not determinative; a defendant may waive rights—whether created by statute, rule, or constitution—by failing to object. The admission of the child's statements does not rise to the level of plain error.[2]

I also would hold that admission of the child's hearsay statements did not violate the defendant's sixth amendment right to confront witnesses because the circumstances in which they were made demonstrate particularized guarantees of trustworthiness. The statements were made shortly after the incident happened; the child told the same story very consistently; there is no apparent motive to fabricate; the child's statements were spontaneous; and they were not the product of leading questions. The evidence is clearly sufficient to sustain the convictions.

---

**1.** This contention was incorrect. We held in *State v. Bellotti*, 383 N.W.2d 308, 314 (Minn.Ct. App.1986), that a witness found incompetent to testify is unavailable under § 595.02, subd. 3.

**2.** The plain error rule in Minn.R.Evid. 103(d) and Minn.R.Crim.P. 31.02 is based on Fed.R. Crim.P. 52(b). To prevail, the defendant must show the trial court erred in admitting evidence and that the error had a substantial adverse effect on the defendant's rights resulting in a miscarriage of justice. *United States v. Resnick*, 745 F.2d 1179, 1183 (8th Cir.1984); *State ex rel. Rasmussen v. Tahash*, 272 Minn. 539, 550–51,

141 N.W.2d 3, 11 (1965) (a conviction based on evidence obtained in violation of the federal constitution may be reversed although no objection was made at trial, if to do otherwise would perpetuate a substantial and essential injustice in the sense that an innocent person may have been convicted). In this case the error in failing to hold a hearing is procedural only, because the statements are admissible under § 595.02, subd. 3, in view of the corroborating evidence. The defendant has not shown any substantive error in admission of the evidence.