STATE of Minnesota,
petitioner, Appellant,

v.

Gregory A. BURNS, Respondent.

No. C3-85-2330.

Supreme Court of Minnesota.

Oct. 17, 1986.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for appellant.

C. Paul Jones, Asst. Public Defender, Anne McDiarmid, Minneapolis, for respondent.

AMDAHL, Chief Justice.

We granted the petition of the state for review of a 2–1 decision of the Court of Appeals reversing the conviction of defendant for sexually abusing his 2½–year–old daughter and granting him a new trial. The Court of Appeals based the reversal on the fact that the trial court did not conduct a hearing before admitting the hearsay statements of the victim to her mother, to a social worker, and to the doctor who examined her. *State v. Burns,* 390 N.W.2d 819 (Minn.App.1986). The dissent argued that it was error to grant a new trial because defendant never requested a hearing or objected to the lack of one and because it was clear from the trial transcript that the evidence in question was admissible. 390 N.W.2d at 823. We agree with the dissent that the lack of a hearing in this case does not by itself justify the granting of a new trial. Accordingly, we reverse the decision of the Court of Appeals and reinstate the judgment of conviction.

The new trial ordered by the Court of Appeals would be defendant's third trial on the charges in question. After being found guilty the first time, defendant moved for a new trial on the ground of newly-discovered evidence, evidence that at least arguably might have helped the defendant at the first trial but which had not been disclosed to the defense because the police had failed

to disclose it to the prosecutor. The trial court reluctantly granted defendant a new trial. At the new trial, presided over by a different judge, the defendant was again found guilty on what apparently was substantially the same evidence produced at the first trial (defendant did not offer the newly-discovered evidence on which the award of a new trial was based).

The state's evidence at the second trial consisted of the following:

(a) Testimony by the mother, who lived alone with the victim, that late on the evening of February 1, 1985, she picked up the victim at the victim's grandmother's place, where defendant had dropped her off late that afternoon. On getting ready for bed, the victim said, "Ow, my butt," then said moments later, "Daddy put his finger in my butt." "Butt" is a term that the victim used to refer to both her vagina and her rectum. The victim also said, "I touched daddy's butt." When the mother began questioning her, the victim started getting nervous and so the mother stopped questioning her. The mother testified that on the evening of the next day, February 2, at the urging of her sister, she asked the victim what had happened with the father the day before. The victim told her that defendant pulled down her pants and put his finger in her butt.

(b) The mother took the child to the emergency ward at Children's Hospital on February 3. Dr. Jean Ebrahimi could not get much of a history from the child but concluded on the basis of objective physical observations that the child had been sexually abused. The examination showed: (i) that the victim was unusually red in the vaginal area and that the redness was not caused by any infection, (ii) that the victim was unusually passive during the rectal examination, an examination that usually causes children to react, (iii) that she could not see the hymenal ring when the victim was lying on her back with her legs spread, something that is rare in a child that age, (iv) that it was "unusually easy" for her to insert a finger into the vagina, there being no tightness in the hymenal ring.

(c) Late that night, the victim laughingly told the mother that "daddy eats my boobies up."

(d) On February 6 a social worker questioned the victim, using anatomically correct dolls, and the victim showed the male doll, which she called "Daddy," remove his pants and the girl doll's clothes, then penetrate the girl doll's vagina with his finger several times. The victim then had the male doll touch the girl doll's buttocks and breasts with his finger. She then had the male doll's lips touch the girl doll's breasts. She told the social worker that this happened in the bathroom at her father's place.

(e) Later that day, Sergeant Lisa Millar also questioned the victim, using anatomically correct dolls, and the victim made similar statements to her, adding that defendant's girlfriend's 4-year-old son was present.

At the outset of the second trial defendant's counsel said, in chambers, that she wanted a continuing hearsay objection to the testimony of the mother, the social worker and the police officer regarding the victim's statements to them. She based her objection on the belief that the victim's incompetency to testify did not render the victim unavailable under Minn.Stat. § 595.-02, subd. 3 (1985 Supp.).[1] The prosecutor

---

**1.** Subd. 3. Certain out-of-court statements admissible. An out-of-court statement made by a child under the age of ten years * * * alleging, explaining, denying, or describing any act of sexual contact or penetration performed with or on the child * * * by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence if:

  (a) the court or person authorized to receive evidence finds, in a hearing conducted outside of the presence of the jury, that the time, con-

tent, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and

  (b) the child * * * either:

  (i) testifies at the proceedings; or

  (ii) is unavailable as a witness and there is corroborative evidence of the act; and

  (c) the proponent of the statement notifies the adverse party of his intention to offer the statement and the particulars of the statement

asserted that the victim's incompetency did constitute unavailability. The trial court ruled that incompetency did constitute unavailability under the statute. He added that in the event the witnesses were reliable and the surrounding circumstances provided indicia of reliability, he would admit the hearsay statements. At no time did defense counsel ever request a hearing for the purpose of considering whether the statements were otherwise admissible or inadmissible under the statute, nor did she ever argue that admission of the statements violated defendant's right of confrontation. However, on appeal the defendant raised both of these issues. As we have stated, the Court of Appeals ruled, in a 2–1 decision, that defendant was entitled to a new trial because the trial court failed to conduct a hearing on the admissibility of the statements.

The decision of the Court of Appeals is inconsistent in a number of different ways with several decisions of this court. First, the decision is inconsistent with cases holding that even where a pretrial hearing should be held to determine admissibility of evidence, a defendant ordinarily cannot obtain relief on appeal for the absence of such a hearing if he did not object on that ground. For example, in *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967), we prospectively adopted certain procedures that "shall be followed" with respect to the admission of other-crime evidence. We stated, among other things, that the evidence is admissible "only if" the trial court finds that the evidence is needed and that evidence of the defendant's participation in the offense is clear and convincing. *Id.* at 178–79, 149 N.W.2d at 284–85. Notwithstanding this language, we subsequently held that once the notice of intent to use the other-crime evidence is given, the other procedures become mandatory only on the defendant's objection and/or request and that the defendant's failure to object or request generally prevents the defendant from obtaining relief on appeal.

*State v. Forsman*, 260 N.W.2d 160, 169 (Minn.1977). Another example is *State v. Ortlepp*, 363 N.W.2d 39 (Minn.1985) (holding, *inter alia*, that the defendant was entitled to an omnibus hearing on the admission of exculpatory statements to the police but that failure to hold such a hearing was not a ground for relief on appeal because defense counsel acquiesced in deferring decision on the statements until the day of trial and did not request an evidentiary hearing once the trial started).

The decision is also inconsistent with cases holding that, even when the issue is preserved for appeal, the lack of an admissibility hearing where one would normally be held does not automatically entitle a defendant to relief. *See, e.g., Coralin v. State*, 377 N.W.2d 14 (Minn.1985) (evidence in record of independent ground for identification made trial court's erroneous refusal to hold mid-trial hearing on fairness of identification procedures harmless error); *State v. Ortlepp*, 363 N.W.2d 39 (Minn. 1985) (failure to hold omnibus hearing was not prejudicial error because it was clear from the record on appeal that the defendant was not entitled to have the statements suppressed); *State v. Riley*, 303 Minn. 251, 226 N.W.2d 907 (1975) (failure of prosecutor to give *Rasmussen* notice did not bar admission of evidence where defendant had a chance to explain the relevant facts and the lack of notice or of a more extensive hearing was not prejudicial). Our recent decision in *State v. Doughman*, 384 N.W.2d 450 (Minn.1986), is not inconsistent with this; it held merely that the lack of compliance with *Spreigl* requirements was prejudicial under the facts of that case.

Finally, the decision is inconsistent with cases making it clear that the award of a new trial is not necessary if some other lesser remedy, *e.g.*, the holding of a postconviction evidentiary hearing, would be more appropriate. Examples are *State v. Causey*, 257 N.W.2d 288 (Minn.1977), and

---

sufficiently in advance of the proceeding at which he intends to offer the statement into

evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

*Doan v. State,* 290 Minn. 105, 186 N.W.2d 518 (1971). Here we agree with the dissent that the record made at trial establishes that the evidence was properly admitted. However, if this were not so and it were possible that the state at a postconviction hearing would be able to establish that the evidence had sufficient guarantees of trustworthiness to justify admission, then a remand would be more appropriate then a reversal.

It is true that in this case we are dealing with a statutory rule of evidence, but that does not support a different result. Although the statute seems to say that the evidence is admissible only if a hearing is held, we doubt that the legislature intended that a defendant could forego objection and then obtain a reversal on appeal even though the lack of a hearing was nonprejudicial. In any event, as we made clear in *State v. Willis,* 332 N.W.2d 180, 184 (Minn.1983), we have the primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters and we believe that statutory rules of evidence enforced as a matter of comity should be interpreted consistently with the Minnesota Rules of Evidence, including Minn.R.Evid. 103, which codifies long-standing rules dealing with the need for objection, the conduct of admissibility hearings, the plain error doctrine, and harmless error analysis.

In conclusion, defendant has had two trials on the same basic evidence, and a total of 24 jurors have been satisfied beyond a reasonable doubt of his guilt. The fact that the trial court did not conduct an evidentiary hearing does not justify granting the defendant a new trial, since defendant did not request such a hearing or object to the lack of one and since the record makes it clear that the evidence was admissible and that therefore any error in not conducting a hearing was harmless.

Reversed and judgment of conviction reinstated.