STATE of Minnesota,
Petitioner, Appellant,

v.

Brian Eugene DANA, Respondent.

No. C4–87–350.

Supreme Court of Minnesota.

April 15, 1988.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., Steven C. DeCoster, St. Paul, for appellant.

C. Paul Jones, Jonathan C. Steinberg, Minneapolis, for respondent.

## OPINION

AMDAHL, Chief Justice.

The main issues on appeal in this prosecution for child sex abuse relate to Minn. Stat. § 595.02, subd. 3 (1986), which is a legislatively-created exception to the hearsay rule for certain out-of-court statements made by children under the age of 10 who are the victims of sexual assaults. The court of appeals ruled, *inter alia*, that the trial court erred in deciding the issue of the admissibility of testimony regarding the statements on the basis of written summaries of the statements and the representations of the prosecutor relating to the reliability of the statements. *State v. Dana*, 416 N.W.2d 147, 151 (Minn.App.1987). The court of appeals ruled further that the error, when combined with certain other errors, deprived the defendant of a fair trial; accordingly, it reversed defendant's convictions of sexually abusing his two sons, ages 4 and 5, and granted him a new trial. 416 N.W.2d at 151–54. We reverse the court of appeals and reinstate the convictions.

Defendant, who is a homosexual, and the victims' mother were married in 1978. The victims, both boys, were born in November 1979 and January 1981. The marriage was terminated in 1981 after defendant resumed being an active homosexual. The mother was given physical custody of the boys, with defendant being allowed weekend visits with the boys once a month at his parents' house in Maplewood.

Between the spring of 1983 and the fall of 1984 the mother and her second husband noticed a gradual worsening of the boys' behavior: the boys began fighting with each other seemingly more than is normal for siblings, the older one started having bad nightmares nearly every night, and the younger one started to wet his bed frequently. The parents also noticed that it took the children increasingly longer—up to 10 days—to "settle down" after their monthly visits with defendant. Then in January 1985 the parents noticed when the children returned from their monthly visits that the children had not used the pajamas that the mother had sent with them. When asked why, the children said that they had not needed the pajamas, that they had slept with defendant in their undershirts. The mother talked with Peter Vadnais of Ramsey County Domestic Relations, saying that she was concerned that the children were being abused but that she did not really have any solid evidence of abuse. He suggested that she call the police so that, in the event something later developed, they would have a record. She did that and she also met with Dr. Sandra Hewitt, a child psychologist, who began seeing the children once a week.

The boys first talked of sexual abuse on March 5, 1985, during a discussion at their day care center of "good touch and bad touch." The teacher informed the parents, and the children began that night to reveal things to them about what had been happening. Dr. Hewitt continued to meet with the boys and began getting more of the details of the abuse. A police investigation was begun, and Dr. Carolyn Levitt, a pediatrician with an expertise in diagnosis of child abuse, also saw the boys.

The story that finally emerged was that defendant had been engaging in a course of conduct that involved acts of fellatio by and upon the boys and a number of forms of sexual contact, and that defendant's homosexual roommate, Jeffrey Lewis, had also been involved. The boys said that the sexual acts had occurred at the grandparents' house in Maplewood (where the visits took place), at a bathroom in Town Square in downtown St. Paul, and at the Minneapolis residence that defendant and Lewis shared. The children said that defendant had taken instant pictures of them without clothing on at the Minneapolis address. It also was clear from what they said that

tubes of petroleum jelly had been used. A warranted police search of the Minneapolis residence resulted in the discovery of an instant camera, pictures of both children undressed, and some tubes of petroleum jelly on the headboard of the bed that defendant and Lewis shared. Both boys revealed details but the older one was more comfortable in doing so.

At a hearing outside the jury's presence on the competency of the children, the older one by his answers displayed that he clearly was competent to testify but the younger one basically refused to talk. The trial court ruled that the older one was competent but that the younger one was not. The issue then became whether the out-of-court statements of the children, particularly of the younger one, were admissible substantively under Minn.Stat. § 595.02, subd. 3 (1986).[1] Defense counsel objected to the trial court's deciding the admissibility issue without first listening to the testimony of the various witnesses out of the presence of the jurors. The trial court in response said (a) that he had read all the relevant papers in the file, the reports of the experts, and the police reports, (b) that he had examined all the circumstances under which the various statements were made, (c) that the people who would be testifying were all reliable, (d) that no purpose would be served by having them all come in and testify out of the jury's presence in advance of their trial testimony, and (e) that under the circumstances he felt that his examination of the record and listening to the arguments of the attorneys satisfied the hearing requirement of the statute.

The mother and stepfather gave detailed chronological testimony concerning the discovery of the misconduct and all of the things the boys had revealed. Similarly detailed testimony was provided: by the Maplewood police, who video taped their second interview with the children, a video tape which was played for the jurors; by Dr. Hewitt concerning the detailed revelations made by the children to her; and by Dr. Levitt concerning her examination of the children. The older boy also testified about the abuse of him and the abuse of his brother that he witnessed.

Defendant, for his part, denied all of the allegations, as did Lewis, who testified on defendant's behalf. Defendant also called his parents and siblings, who testified that what the children said had happened could not have happened. Defendant also called a number of witnesses who testified that in their opinion defendant was an honest person who would not lie.

The jury found defendant guilty of two counts of intrafamilial sexual abuse in the first degree, one per victim, and four counts of intrafamilial sexual abuse in the second degree, two per victim. After the trial, defendant immediately fled the state. A year later he was arrested in Nevada and was returned to Minnesota for sentencing. He was sentenced to two consecutive 43-month prison terms.

1. As we said, the main issues relate to Minn.Stat. § 595.02, subd. 3 (1986). This statute provides:

> An out-of-court statement made by a child under the age of ten years * * * alleging, explaining, denying, or describing any act of sexual contact or penetration performed with or on the child * * * by another, not otherwise admissible by statute or rule of evidence, is admissible as substantive evidence if:
>
> (a) the court or person authorized to receive evidence finds, in a hearing conducted outside of the presence of the jury, that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provides sufficient indicia of reliability; and
>
> (b) the child * * * either:
>
> (i) testifies at the proceeding; or
>
> (ii) is unavailable as a witness and there is corroborative evidence of the act; and

---

1. Under our cases, since the older boy was going to testify, his out-of-court statements would have been admissible for corroborative purposes in any event. *State v. Gardner,* 328 N.W.2d 159 (Minn.1983); *State v. Arndt,* 285 N.W.2d 478 (Minn.1979).

(c) the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

In *State v. Burns*, 394 N.W.2d 495 (Minn. 1986), we reversed a decision of the court of appeals that reversed a conviction of a defendant for sexually abusing his 2½–year–old daughter. The court of appeals in that case based the reversal on the trial court's admitting hearsay statements of the victims under section 595.02 without conducting a hearing on the admissibility of the statements as required by the statute. We reversed the court of appeals and reinstated the conviction, stating *inter alia* that the lack of an admissibility hearing was not prejudicial because the record of the trial made it clear that the hearsay evidence was properly admitted. 394 N.W.2d at 497–98.

██ This case is different in that it raises, first of all, the issue of what sort of admissibility hearing is required. In *Burns*, 394 N.W.2d at 498, we said:

[W]e have the primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters and we believe that statutory rules of evidence enforced as a matter of comity should be interpreted consistently with the Minnesota Rules of Evidence, including Minn.R.Evid. 103, which codifies longstanding rules dealing with the need for objection, the conduct of admissibility hearings, the plain error doctrine, and harmless error analysis.

The court of appeals' opinion concludes, wrongly in our opinion, that the trial court erred in deciding the admissibility issue on the record he had, without requiring those who would be summarizing the statements of the children to testify separately and out of the presence of the jury in advance of their trial testimony. We believe that the trial court acted consistently with Minn.R. Evid. 103 and 104, which are general provi-

sions governing the trial court in making rulings on evidence, and with relevant decisions of this court. There were no significant factual issues underlying the admissibility decision, only the basically legal issue of the reliability of the statements. As stated at 1 D. Louisell & C. Mueller, *Federal Evidence* § 29 at 197 (1977), the heart of the matter of determining whether to admit hearsay is that unreliable evidence should be kept from the jury; this is a legal determination that the trial court makes on the basis of experience and legal education. That being so, we believe that the admissibility hearing in this case was adequate. *State v. Kasper*, 409 N.W.2d 846 (Minn.1987) (*held*, reversing court of appeals, trial court at *Spreigl* hearing had broad discretion in deciding whether, on the one hand, to accept offer of proof or, on the other, to require state to call *Spreigl* witnesses). Of course, if there is a question of fact relating to the admission of hearsay evidence, under Minn.R.Evid. 104 the trial court will often receive evidence pro and con on the issue. For example, in deciding whether to admit a statement of a coconspirator of a party under Minn.R.Evid. 801(d)(2)(E) the trial court may have to admit evidence pro and con as to the existence of a conspiracy. Even then, however, the trial court need not necessarily conduct the sort of mini-trial that the court of appeals' decisions seems to contemplate. *Bourjaily v. United States*, —— U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (holding that under F.R.Evid. 104 the trial court may consider hearsay evidence in determining fact question of whether a conspiracy existed).

██ We believe that the evidentiary hearing in this case was adequate. However, if the hearing was not adequate, under *Burns* the defendant has no right to complain on appeal about the admissibility of the hearsay evidence if testimony adduced at trial makes it clear that the evidence was properly admitted. Although the court of appeals is not clear on this in its opinion, it seems to say that the trial testimony did not establish sufficient indicia of reliability to justify the admission of the evidence. 416 N.W.2d at 151–52. It

also interpreted the statute as allowing the admission of only those statements of each child relating to the abuse of that child. *Id.* It bases this interpretation on the fact that the statute refers to a statement by a child describing a sexual act "with or on the child." We see no need to so artificially limit the scope of the statute. If, as here, two children are abused at the same time by the same defendant, the statements of each child relating to that incident should be admissible under the statute, providing that the other prerequisites to admissibility have been met. We believe that there were sufficient indicia of reliability present and that the statements were properly admitted under the statute.[2]

■ 2. One of the other issues addressed by the court of appeals is whether the trial court acted inappropriately in excluding evidence on its own motion and in questioning certain witnesses. The trial court interrupted defense counsel on a number of occasions, ruling certain lines of questions inappropriate on grounds such as irrelevance and repetitiousness. The ABA Standards for Criminal Justice Relating to the Special Functions of the Trial Judge recognized that the trial court has a duty at times to interfere with counsel in the examination of witnesses even in the absence of objection by opposing counsel—*e.g.*, to prevent unreasonable repetition or to prevent counsel from pursuing clearly irrelevant lines of inquiry. I ABA Standards for Criminal Justice 6–2.2 to 6–2.4 (2 ed. 1986). Of course, there is a danger in the trial court taking an overly active role in a criminal trial, especially when it happens that throughout the entire trial the court interrupts and admonishes the defense counsel numerous times but does not do this to the prosecutor. However, a reading of the transcript in this case reveals that the trial court acted properly and in an even-handed way without giving the jurors the impression that he favored one side or the other. Indeed, in his instructions the trial court made it clear to the jurors that he was not

trying to express or imply his views by his interruptions of both attorneys or by his rulings. The only thing that troubled the court of appeals was the trial court's colloquy with the older boy at the close of his testimony. In this brief exchange, the trial court told the boy that he was "a pretty good young man," asked him if he had had a good time, and asked him if he wanted to go home. 416 N.W.2d at 152. The court of appeals attached great significance to this, suggesting that the trial court's words to the boy "may have had the unintended effect of seeming to put the court's imprimatur on the child's testimony when his credibility was a critical issue in the case." *Id.* The court of appeals cited this as partially supporting its award of a new trial. *Id.* We agree that the trial court's brief exchange with the witness may have been technically improper. However, defense counsel did not object and we do not believe that the trial court's statements could have played a significant part in influencing the jurors to convict defendant.

■ 3. The court of appeals' opinion also partially based its reversal on the erroneous admission of opinion testimony of Dr. Hewitt, the child psychologist, that it was defendant and Lewis who had sexually abused the boys. The issue of the role of expert testimony in child abuse cases is analyzed in detail in *State v. Myers,* 359 N.W.2d 604 (Minn.1984), among other cases. We deal here not with the issue of the admission of expert opinion testimony bearing on whether sexual abuse has occurred but with opinion testimony on the issue of who it was who abused the children. We agree with the court of appeals that Dr. Hewitt's testimony on this was objectionable. However, defense counsel did not object to the evidence in question. Further, on this record it is clear that any error in admitting the evidence was not prejudicial since the real issue for the jury was whether the children had been sexually abused, not who did it. Expert testimo-

---

**2.** In view of this, we will not analyze the issues of whether some or all of the statements properly could have been admitted substantively under other rules of evidence and whether any error in admission of some or all of the hearsay statements as substantive evidence would constitute prejudicial error.

ny relating to whether the children had been sexually abused was properly admitted.

Reversed and judgment of conviction reinstated.

KELLEY, Justice (dissenting):

I respectfully dissent. I would affirm the remand of the court of appeals for a new trial for the reason the defendant was denied an appropriate "hearing" on the admissibility of child testimony, and, that as a result the record is devoid of sufficient indicia of reliability of such statements to justify their admission in evidence at the trial.

In enacting Minn.Stat. § 595.02, subd. 3 (1986), I think the legislature, with remarkable clarity, has provided that as a condition precedent to admissibility of a child's out-of-court hearsay statement in a prosecution charging intrafamilial sexual abuse, there must be a "hearing." An elementary precept of statutory construction commands that words in a statute are to be construed according to common and approved usage, and if a word in a statute is deemed to have a technical connotation, it is to be construed with reference to its technical meaning. *See, e.g.,* Minn.Stat. § 645.08(1) (1986). Whether one considers the word "hearing" as used in Minn.Stat. § 595.02, subd. 3(a) (1986) as a word in common usage or as one used in a technical sense, the result remains the same. In both vernacular and legal parlance the word "hearing" connotes the existence of an opportunity to be heard and to present one's side of a controversy, or, in other words a procedure in the nature of a trial, or, in the case of preliminary matters, of a "mini-trial." *See, e.g.,* Websters 3rd International Dictionary (Unabridged p. 1044), Black's Law Dictionary 649 (5th ed. 1979). Here the record clearly demonstrates that what occurred before the trial judge could not be considered a "hearing" under any usage of the word. Though he properly and promptly requested, the defendant's attorney was denied his right to challenge either the content of this statement or credibility of the statement or person reporting by cross-examination, or otherwise.

Though suggesting so only obliquely, the court's opinion, in effect, says the hearing requirement of the statute is meaningless because, in the court's opinion, the trial court comported with Minn.R.Evid. 103 and 104. I respectfully disagree. Even Rule of Evidence 104(c) requires "hearings on—preliminary matters." I take it the ruling on admission of this out-of-court child hearsay testimony would be deemed a preliminary matter. While I have no quarrel with the court's opinion that the ultimate decision on admissibility rests with the trial court, I fail to see why the "hearing" requirement of the statute and rule are incompatible, and why the requirements traditionally in our law associated with "hearings" need be disregarded as clearly as they were here. We simply do not know whether there were factual disputes surrounding the minor victims' statements or the reliability of the persons reporting those statements. Because the trial judge personally knows and has confidence generally in the work of a social worker does not necessarily foreclose the possibility that in a particular instance the worker's report, by a mistake or otherwise, might be unreliable. The trial court's denial of a hearing to defendant's counsel foreclosed him from making any preliminary probe into the extent of that reliability.

The court's opinion seems to recognize as much, but concludes that defendant has now no cause of complaint if, following trial, it is clear the evidence was properly admitted. Again, I must conclude, as did the court of appeals, that Minn.Stat. § 595.02, subd. 3 prohibits substantive use of out-of-court hearsay statements of one alleged child victim about alleged abuse of another child. I don't think that application of plain statutory language results in "artificially limiting the statutory scope." Presumably the statute means what it says, and as the court of appeals noted, the testimony from Dr. Hewitt in this case could well provide the explanation of why the wording in the statute limiting the ability of the child to testify to abuse of himself was selected by the legislature.

Without question there exist facts in this record, as well as facts which occurred after the conviction, that suggest that defendant's conviction might well have been justified. Nonetheless, that is irrelevant to the issue before us. The question here is whether the accused was afforded the trial protections the law affords all persons accused of this type of crime. I agree with the court of appeals that he was not. Therefore, I would concur in its remand.

POPOVICH, Justice (dissenting).

I concur in the dissent of Justice Kelley for the reasons stated.