**STATE of Minnesota, Petitioner, Appellant,**

v.

**William E. LEHMAN, Jr., Respondent.**

No. C4–93–180.

Supreme Court of Minnesota.

Jan. 14, 1994.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Alan L. Mitchell, St. Louis County Atty., Duluth, and Brian D. Simonson, Asst. County Atty., Hibbing, for petitioner, appellant.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for respondent.

WAHL, Justice.

In its decision in this case the court of appeals granted defendant, William E. Lehman, Jr., a new trial on the charge of assault with a dangerous weapon because the trial court, as a minimal security measure, required him to wear a leg brace under his pants on one leg. *State v. Lehman,* 508 N.W.2d 204 (Minn.App.1993). We agree with the court of appeals that the trial court erred in failing to make findings on the need for the brace. However, because we conclude that the record on appeal demonstrates that the trial court's decision was both objectively justified and nonprejudicial, we reverse the decision of the court of appeals and reinstate the judgment of conviction.

Defendant is a violent offender with a record of recidivism. In 1980 he committed an armed robbery of a bank. That same year, while a deputy was transporting defendant in a squad car on a hot day, the deputy decided to let defendant ride in the front seat, which was air conditioned. Defendant disarmed the deputy, held the deputy's .357 magnum revolver at the deputy's head, and threatened to kill him if he did not remove defendant's handcuffs. Defendant then stole the car.

Defendant spent the next 10 years in prison. It appears that in 1990 defendant assaulted a jailer as he was about to be released from prison.

The offense we are directly concerned with is the August 1992 stabbing of an acquaintance in the chest with a knife, inflicting a wound 6–7 inches long and 1½ inches deep. The wound was in the area in which one would inflict a wound if one were trying to stab someone in the heart and lung.

Defendant was charged with the offense in early September and spent the 2 months between the charge and trial in jail. At the start of trial defendant elected to represent himself, which meant that, unless he was directed to remain seated, he would be standing and walking during his examination of witnesses. In part because of defendant's violent past, the sheriff's office was legitimately concerned about security. Sometime toward the end of the state's case, the office obtained a new kind of leg brace designed to minimally restrain the wearer's movement. The brace is not leg irons or ankle cuffs, but is a two-piece rod with four metal half-cylinders designed to fit under one's pants and around one's leg by means of velcro fasteners. By pressing a release device, the wearer can easily get the two-piece rod to bend at the knee, allowing the wearer to sit. The wearer can do this unobtrusively without reaching inside his pants. If the wearer stands, however, the rod locks at the knee and the wearer cannot run or walk rapidly. While the brace itself is not visible, one who is attentive to such things easily could see that the wearer has a leg brace of some kind.

Minn.R.Crim.P. 26.03, subd. 2.c. provides:

Defendants and witnesses shall not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order or security. A trial judge who orders such restraint shall state the reasons on the record outside the presence of the jury. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge shall on request of the defendant instruct those jurors that such restraint is not to be considered in assessing the proof and determining guilt.

Apparently the sheriff's office did not get advance permission from the trial court to require defendant to wear the device. However, defendant immediately complained in chambers, apparently before he ever wore it in the courtroom. The prosecutor said that he deferred to the sheriff, who felt defendant should be required to wear the device, and noted that at another trial in Wisconsin, defendant had been subjected to much greater restraint. Defendant explained that his real objection was that the device did not fit his physique. He conceded that the sheriff had "a legitimate security interest here" but felt that the sheriff was "going overboard." He also reassured the court that he was not going to try to escape.

The trial court denied defendant's request that the device be removed, saying that it would defer to the sheriff because "this is the court room and it's [the sheriff's] responsibility for the security of the court and custody of you."

During the trial, defendant, who had the benefit of advice from standby counsel if he wanted it, presented evidence of his own good character and the victim's bad character, with the result that the trial court properly allowed the state to present evidence about defendant's prior violent criminal conduct. Defendant also testified and was properly impeached by his prior convictions, which he readily admitted.

With respect to the incident on which the charge was based, the state presented strong evidence of guilt, including eye-witness testimony indicating that the stabbing was not in self-defense and testimony by a bartender that after the incident defendant said that he was the person who stabbed "the guy" and that he meant to kill him. The bartender also testified that defendant said, "I'll be 6 feet under before I go back to prison" and that defendant said he had dynamite and would blow the victim up on the spot if the victim came in the bar.

In closing argument defendant revealed to the jury that he had been required to wear a leg brace as a security measure. He said:

Now, I suppose some of you have noticed that I'm in a leg restraint. I walked pretty free the first morning at trial. After that, all of a sudden I'm having trouble. I am stumbling around here. That's what that is. That's a leg restraint. It's because I've been in jail for the last sixty days awaiting this trial. It's one more reason why my testimony, my conduct in this trial, wasn't real smooth and it took longer than it should.

The jury found defendant guilty as charged, and the trial court sentenced him to 44 months in prison.

The court of appeals awarded defendant a new trial holding that the trial court's failure to make findings on the need for requiring defendant to wear the leg brace and on the fact that it is not clear from the record whether the jury on its own inferred that defendant was wearing a leg brace. Stating that it could not be certain that defendant received a fair trial, the court awarded him a new trial. *State v. Lehman,* 508 N.W.2d 204 (Minn.App.1993).

██ In *State v. Stewart,* 276 N.W.2d 51 (Minn.1979), we considered in depth the issue of restraining a defendant during trial. Generally, a defendant should not be subjected to physical restraint during trial unless it is reasonably and eminently necessary and then only to the extent necessary under the circumstances. *Id.* at 61. Based on these factors we held that the visible shackling of Stewart was necessary, given the pre-trial evidence strongly suggesting the possibility that he might become violent at trial.

In *State v. Scott,* 323 N.W.2d 790 (Minn. 1982), the issue was whether the trial court prejudicially erred in requiring the defendant in a trial for armed robbery to wear leg irons. As in this case the key fact arguing for restraint was the fact that the defendant had escaped from custody once already (there the escape was from prison). With two prior sentences hanging over his head and the possibility that the trial court would use consecutive sentencing if he was convicted again, Scott also had a motive for wanting to escape. Over defense objection, the trial court required the defendant to wear the leg irons but took care to prevent the jury from seeing them: the defendant was seated before the jury entered the room and did not wear the irons when he testified. In affirming the defendant's conviction, we suggested in a footnote that the record supported the trial court's decision, but we did not decide the issue because there was no indication in the record that the jury learned the defendant was wearing the restraints and therefore any error was nonprejudicial. 323 N.W.2d at 792, n. 2.

██ Defendant, who has the burden on appeal of establishing prejudicial error entitling him to a new trial, has established that the trial court erred in failing to make the finding required by the rule. However, he has not persuaded us that the trial court's decision to require the use of the restraint was unjustified. In fact, we believe the record on appeal affirmatively demonstrates that the trial court's decision was objectively justified. The record shows that defendant, a violent recidivist with a prior conviction for a violent escape from custody, was on trial for another violent offense. Significantly, defendant was representing himself, which meant that he was not confined to a chair during trial but had the same freedom of movement within the courtroom that the prosecutor had. Under the circumstances, the trial court had a basis for approving the use of the leg brace. The brace was a very minimal restraint that still allowed the defendant to walk. It is possible, perhaps likely, that the jury could tell that the defendant was wearing a brace of some kind on one leg. But there is no reason to believe that the jury inferred that the brace was a security device rather than a medical device.[1]

---

1. If defendant were entitled to any relief, it would be a remand for a *Schwartz* hearing, not a remand for a new trial. *State v. Benedict,* 397 N.W.2d 337, 340 (Minn.1986); *State v. Burns,* 394 N.W.2d 495, 497 (Minn.1986). As we said in *Burns,* "[T]he award of a new trial is not necessary if some lesser remedy, *e.g.,* the holding of a post-conviction evidentiary hearing, would be more appropriate." 394 N.W.2d at 497. At such a hearing the trial court would ask the jurors not about their thought processes in concluding defendant was guilty (which is forbidden at a *Schwartz* hearing) but whether they noticed defendant was wearing a leg brace and, if so,

At worst the record on appeal shows that the trial court did not follow the proper procedures in requiring defendant to wear the brace on one leg; the record does not show that it is likely that the jury on its own (without defendant telling them) would have inferred that defendant was being required to wear some sort of security device or that it would have inferred from that that the trial court somehow felt defendant was a dangerous person. If the jury inferred that defendant was a dangerous person, it likely based this inference upon the evidence of defendant's prior offenses, evidence which was properly admitted after defendant put his own character in issue.

Reversed and judgment of conviction reinstated.

whether they were aware it was a security device rather than a medical device. In an appropriate case where a hearing is warranted, the trial court could hold the hearing notwithstanding the passage of a significant period of time following trial. *Benedict*, 397 N.W.2d at 340 n. 1 (Minn. 1986). We do not believe that a remand for such a hearing is needed in this case.