STATE of Minnesota, Respondent,

v.

Michael CAUSEY, Appellant.

No. 46491.

Supreme Court of Minnesota.

July 22, 1977.

---

Bruce Hartigan, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Richard G. Mark, Asst. Atty. Gen., Frederick S. Suhler, Jr., Sp. Asst. Atty. Gen., St. Paul, Dennis P. Moriarty, County Atty., Shakopee, for respondent.

Heard before ROGOSHESKE, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant appeals from a judgment of conviction in district court for possession of heroin, morphine, and hashish and possession of heroin with intent to sell. We remand for a hearing.

This appeal concerns the sufficiency and accuracy of an affidavit supporting a warrant which authorized search of defendant and his residence. That search yielded the evidence that resulted in defendant's conviction. The affidavit stated in pertinent part:

"Affiant, Donald Hamilton, states that he is a Sgt. for the Scott County Sheriff's Office, a resident of Scott County Minnesota and a member of the Metropolitan Area Narcotics Squad and that affiant has been working in the area of drug control for the past 8 years. That during the past 8 years, the affiant has worked with several different informants and has had extensive experience in judging the reliability of the informant.

"The affiant was informed by an informant who he considers reliable that Michael Causey during the last week of January, 1974 was in possession of heroin and was using heroin. Affiant's informant further states that the use of heroin and the possession of the heroin occurred at Route 2, Prior Lake, Spring Lake Township, Scott County, Minnesota. This is a residence owned by Earl McQuestion of Savage, Minnesota. The residence, occupied by Michael Causey, is on the Thornton Point Road.

"Affiant's informant further states that he/she had been in the residence occupied by Michael Causey within the last week of January, 1974 and personally observed Michael Causey using the heroin for himself by injecting it into his arm and also observed other heroin at the residence. Affiant then requested that the informant accompany him to the vicinity of the Causey residence. The informant then accompanied the affiant and directed him to the location of the Causey residence. Affiant observed two cars parked in front of the Causey residence. One vehicle registered to Michael Causey and the other vehicle registered to Carroll J. Ahlstrand. A check with the Bureau of Criminal Apprehension for the state of Minnesota revealed that Mr.

Ahlstrand had been convicted for possession of heroin within the past 6 months. Affiant was informed by Agent O'Connor of the Drug Enforcement Administration that Patrick Ryan of Minneapolis informed Agent O'Connor that Michael Causey was dealing in heroin and had heroin in his possession in October and November of 1973. Patrick Ryan then informed Agent O'Connor that Michael Causey had a large quantity of heroin and a large amount of cash close by. Patrick Ryan informed Agent O'Connor that he had purchased narcotics from Michael Causey in the past. Affiant was informed by Agent O'Connor that Patrick Ryan had been in the Causey home."

The district court permitted defendant to challenge the accuracy of the contents of the affidavit at a Rasmussen hearing. The court then denied defendant's motion to suppress. Defendant was convicted in a bench trial and sentenced to an indeterminate term of imprisonment not to exceed 7 years, to be served concurrently with a Federal prison sentence.

This appeal presents two issues:

(1) Is the affidavit facially sufficient to establish probable cause for the search?

(2) Do inaccuracies in the affidavit invalidate the search warrant?

■ 1. Defendant first contends that the affidavit taken at face value fails to establish probable cause for the search. An affidavit based on hearsay information must satisfy the two-pronged test advanced in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and restated in *State v. LaBarre*, 292 Minn. 228, 235, 195 N.W.2d 435, 440 (1972): "[T]he affidavit [must contain] the underlying facts and circumstances to enable the magistrate to independently judge (1) that the informant obtained his knowledge of the reported criminal activity in a reliable manner; and (2) that the officer-affiant had a sufficient

basis to believe that the informant was 'credible' or his information 'reliable.'" The first prong of the test was met by the unidentified informant's first-hand observation of defendant using heroin and keeping it at his residence. E. g., *United States v. Cutts*, 535 F.2d 1083 (8 Cir. 1976); *United States v. Watts*, 176 U.S.App.D.C. 314, 540 F.2d 1093 (1976).

Whether the second prong of the test has been met is a matter of controversy. The affidavit notes that the affiant has 8 years of experience in drug control, that he has "extensive experience in judging the reliability of the informant," and that he considers the informant reliable. These conclusory statements do not enable a magistrate to independently judge the informant's credibility and do not alone satisfy the second prong of the test. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *State v. LaBarre*, 292 Minn. 228, 236, and note 6, 195 N.W.2d 435, 441 (1972). However, if other information in the affidavit corroborates the tip so that it then meets the second *Aguilar* requirement, the tip may be considered probative of probable cause. *Spinelli v. United States, supra; United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Watts, supra.*

The prosecution cites several possible corroborating factors: (1) The informant accompanied and directed the affiant to defendant's rural residence; (2) an automobile parked there revealed that defendant apparently associated with a convicted heroin user; and (3) defendant had a reputation for dealing in heroin 3 months earlier.[1] The corroborating factors appearing in this affidavit make it similar to the affidavit deemed sufficient in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), a case which the plurality opinion in *United States v. Harris*, 403 U.S. 573, 580, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723, 732

---

1. Defendant argues that the information supplied through Patrick Ryan may not be considered for the affidavit fails to establish a basis to independently adjudge Ryan's credibility. Although this hearsay information would thus fail the *Aguilar* test, the Supreme Court has apparently determined that such information may serve to corroborate another informer's tip. See, *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

(1971), characterized as a "suitable benchmark." Mr. Justice Frankfurter, writing for the court in *Jones,* stated:

" * * * The [magistrate] need not have been convinced of the presence of narcotics in the apartment. He might have found the affidavit insufficient and withheld his warrant. But there was *substantial basis* for him to conclude that narcotics were probably present in the apartment, and that is sufficient. It is not suggested that the [magistrate] doubted [affiant's] word. Thus we may assume that [affiant] had the day before been told, by one who claimed to have bought narcotics there, that petitioner was selling narcotics in the apartment. Had that been all, it might not have been enough; but [affiant] swore to a basis for accepting the informant's story. The informant had previously given accurate information. His story was corroborated by other sources of information. And petitioner was known by the police to be a user of narcotics. Corroboration through other sources of information reduced the chances of a reckless or prevaricating tale; that petitioner was a known user of narcotics made the charge against him much less subject to scepticism than would be such a charge against one without such a history." 362 U.S. 271, 80 S.Ct. 736, 4 L.Ed.2d 708. (Italics supplied.)

Because the corroborating factors here taken together provide a substantial basis for crediting the informant's tip, the affidavit is facially sufficient to establish probable cause.

2. Defendant next contends that inaccuracies in the affidavit vitiate the warrant. Defendant had the opportunity to explore the factual basis of the affidavit's contents at a Rasmussen hearing, granted by the court below prior to our decision in *State v. Luciow,* Minn., 240 N.W.2d 833, 245 N.W.2d 235 (1976). In *Luciow,* we held that a defendant has the right, upon a proper showing, to challenge the basis of a facially sufficient affidavit, but we did not establish a standard delineating the circumstances in which inaccuracies in the supporting affidavit would invalidate a search warrant. Recently, however, in *State v. Nolting,* Minn., 254 N.W.2d 340 (1977), we held that an innocent misrepresentation, even though material to the determination of probable cause, was insufficient to invalidate a warrant. In the instant case, we attempt to flesh out the standard in its entirety.

The United States Supreme Court has not dealt specifically with misrepresentations in search warrant affidavits,[2] but state and lower Federal courts have formulated several standards on nonconstitutional bases. We think it unnecessary to discuss in detail the various tests that have been adopted or proposed.[3] Suffice it to say that the tests are based on either one or both of the following factors: (1) the materiality of the misrepresentation to the establishment of probable cause; and (2) the state of mind of the agent who makes the misrepresentation.

Only misrepresentations of material facts should invalidate a warrant. If a misrepresentation is not material, then other information in the affidavit is sufficient to establish probable cause. In this circumstance, Fourth Amendment values would not be furthered by suppressing evidence seized in the resulting search. The Fourth Amendment requires that warrants issue only upon probable cause, and by definition probable cause exists apart from the non-

---

2. See, *Rugendorf v. United States,* 376 U.S. 528, 531, 84 S.Ct. 825, 827, 11 L.Ed.2d 887, 891 (1964); *North Carolina v. Wrenn,* 417 U.S. 973, 94 S.Ct. 3180, 41 L.Ed.2d 1144 (1974) (Mr. Justice White with Mr. Chief Justice Burger, dissenting from denial of certiorari).

3. E. g., see, *United States v. Carmichael,* 489 F.2d 983 (7 Cir. 1973); *United States v. Thomas,* 489 F.2d 664 (5 Cir. 1973), certiorari denied, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed. 64

(1975); *State v. Boyd,* 224 N.W.2d 609 (Iowa 1974); *State v. Sachs,* 264 S.C. 541, 216 S.E.2d 501 (1975); Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence,* 84 Harv.L.Rev. 825; Herman, *Warrants for Arrest or Search: Impeaching the Allegations of a Facially Sufficient Affidavit,* 36 Ohio St.L.J. 721; Comment, 19 U.C.L.A.L.Rev. 96.

material misrepresentation. In an effort to deter perjury by the police, some courts have held that a nonmaterial misrepresentation is sufficient to invalidate a warrant when the officer deliberately misrepresents the nonmaterial fact.[4] This goal is desirable, but we think the remedy employed by these courts paints with too broad a brush. Initially, it must be noted that this situation arises only when a police officer seeks a warrant from a magistrate. By invoking the independent judgment of a judicial officer, the police officer has gone a long way toward the protection of Fourth Amendment values. *State v. Nolting*, Minn. note 7, 254 N.W.2d 340, 345. Of course, if the officer culpably misrepresents the facts, the protection is shattered. Once the officer is before the magistrate, however, there are two deterrents to deliberate misrepresentation. The first is the officer's oath on the affidavit and the possibility of being subject to prosecution for perjury. The second deterrent is that the officer cannot be sure if his misrepresentation is nonmaterial, given the empirical nature of probable cause. See, *Stone v. Powell*, 428 U.S. 465, 540, 96 S.Ct. 3037, 3073, 49 L.Ed.2d 1067, 1114 (1976) (Mr. Justice White, dissenting). Since a deliberate misrepresentation of material fact would invalidate the search, the officer is thereby risking both a perjury prosecution and exclusion of the evidence. We think that these consequences are sufficient to deter an officer from deliberately misrepresenting facts without requiring suppression of evidence where probable cause otherwise exists.

Not all material misrepresentations, however, should vitiate a warrant. Because *only* probable cause is required, an officer may have reasonable grounds to believe the object of his search is on the premises to be searched, even though he has innocently misrepresented a fact material to that determination. An innocent misrepresentation of material fact thus does not negate probable cause and therefore does not contravene the Fourth Amendment. *State v. Nolting, supra.* When the government agent is to some degree culpable—deliberate, reckless, or negligent—in misrepresenting a material fact, probable cause is negated and the Fourth Amendment is violated. The question then concerns the applicability of the exclusionary rule. We agree with the majority of courts which hold that a deliberate or reckless misrepresentation of a material fact will invalidate a warrant, while a negligent misrepresentation will not.[5] The deterrent basis of the exclusionary rule is invoked more strongly by deliberate and reckless misrepresentations. "Negligent misrepresentations are theoretically deterrable, but no workable test suggests itself for determining whether an officer was negligent or completely innocent in not checking his facts further." *United States v. Carmichael*, 489 F.2d 983, 989 (7 Cir. 1973). The difficulties of distinguishing innocent and negligent misrepresentations, as well as subjecting the investigative skill of the officer to second-guess judicial hindsight, outweigh the deterrent effects to be achieved by applying the exclusionary rule to negligent misrepresentations.

■ In sum, the test we adopt has two stages. First, it must be determined whether the misstatement of fact in the affidavit is material to the determination of probable cause. Second, if the misstatement is material, it must be determined whether the government agent[6] deliberate-

---

4. E. g., *United States v. Carmichael*, 489 F.2d 983 (7 Cir. 1973); *United States v. Belculfine*, 508 F.2d 58 (1 Cir. 1974).

5. *United States v. Carmichael*, 489 F.2d 983 (7 Cir. 1973) is the leading case. Accord, *United States v. Marihart*, 492 F.2d 897 (8 Cir.), *certiorari denied*, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974); *United States v. Lee*, 540 F.2d 1205 (4 Cir.), *certiorari denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Luna*, 525 F.2d 4 (6 Cir. 1975),

*certiorari denied*, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976); *State v. Goodlow*, 11 Wash.App. 533, 523 P.2d 1204 (1974).

6. Ordinarily, the state of mind of only the affiant is in question, for the *Aguilar* two-pronged test provides sufficient scrutiny of hearsay information. *State v. Nolting*, Minn., 254 N.W.2d 340 (filed April 1, 1977). However, there may be circumstances in which an individual guilty of misrepresentation is sufficiently linked to the government so that the test should be ap-

ly or recklessly misrepresented the fact. It remains to apply this test to the instant case.

Defendant points to two sources of error in the affidavit; both relate to the factors that corroborated the informant's tip. The first involves the cars Hamilton observed outside the Causey residence when the informant led him there. The affidavit reads:

> " * * * Affiant observed two cars parked in front of the Causey residence. One vehicle registered to Michael Causey and the other vehicle registered to Carroll J. Ahlstrand. A check with the Bureau of Criminal Apprehension for the state of Minnesota revealed that *Mr. Ahlstrand* had been convicted for possession of heroin within the past 6 months." (Italics supplied.)

Carroll J. Ahlstrand testified without contradiction at the hearing that he had never been convicted of a crime. He acknowledged, however, that his son, William Carroll Ahlstrand, had been convicted of possession of a controlled substance and that his son drove his car "quite often." Hamilton testified that he ran a check on Michael Carroll Ahlstrand, but it appears he meant William Carroll Ahlstrand.

 Defendant contends that the erroneous reference to the conviction of Carroll J. Ahlstrand was a deliberate misrepresentation by Hamilton. The district court did not explicitly resolve the question of intent:

> " * * * [T]he Court does not deem this [erroneous statement] fatal. A car was at Causey's house licensed to an Ahlstrand, whichever one owned it, and the two names with the word 'Carroll' therein are much alike and an Ahlstrand was convicted, and both persons are from the same family. For all the officer knew, the car may have been owned by the boy and registered in the father's name."

The instant case is very similar to *United States v. Thomas,* 489 F.2d 664 (5 Cir. 1973), *certiorari denied,* 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975). There, two unidentified informants referred to the individual in question as "Tee." The agent ascribed the name "James H. Finley" to him in the search warrant affidavit, as if the informants had so referred to him.

> " * * * The error was blantantly [sic] misrepresentative.

> "However, the saving feature is that through his investigation [the agent] had secured the license tag number from the informants, discovered the car was registered to James H. Finley; he knew that both 'Tee' and 'James H. Finley' were from Mobile, Alabama, and consequently had a valid basis for assuming that 'Tee' was 'James H. Finley.' Although the issue is a difficult one, we feel compelled to affirm the district court's finding that the agent's belief was made in good faith and not with an intent to deceive the magistrate in this case." 489 F.2d 671.

The court sustained the warrant, finding that the misrepresentation was unintentional and that it was not material to the determination of probable cause.

Unlike the misrepresentation in *Thomas,* the error in the instant affidavit was material to the determination of probable cause. Without corroboration, the informant's tip was constitutionally infirm. Moreover, it is difficult to say that Hamilton had a valid basis for the language he used, although he might have had a valid basis for believing the presence of the Ahlstrand car indicated the presence of William Carroll Ahlstrand.[7] Because the district court did not make a finding on intent, we must remand for a hearing and findings on that issue.

The second source of error involves the information Patrick Ryan purportedly gave Agent O'Connor of the Federal Drug En-

---

plicable to him as well as to the affiant. An example of this situation would be where the affiant was not the investigating officer but merely compiled the affidavit from facts deliberately or recklessly misrepresented by a colleague or subordinate.

**7.** Hamilton had earlier contact with William Carroll Ahlstrand, having had arrested him for possession of heroin. He also apparently had observed him through surveillance for the instant case.

forcement Administration. Defendant alleges two tiers of misrepresentation may be present here. First, defendant notes that Patrick Ryan never actually spoke with O'Connor but, prior to sentencing on a drug charge, he was "debriefed" by Joseph Walbran, an Assistant United States Attorney, who transferred his notes of the conversation to O'Connor as intelligence. O'Connor then read the notes to Hamilton over the phone when he called and requested information about defendant. Second, defendant charges that Hamilton misrepresented the substance of what O'Connor told him. Defendant contends that the first misrepresentation was deliberate and the second was at least reckless.

With respect to the first tier of misrepresentation, the prosecution argues that whether one or another officer or attorney supplied an affiant with information is not material to the determination of probable cause. There is merit in this argument. Although the interpretation of notes of a conversation by someone other than their author presents an increased danger of error, this error may be inherent in modern police work. See, *State v. Radil*, 288 Minn. 279, 283, 179 N.W.2d 602, 605 (1970), *certiorari denied*, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971). See, also, *United States v. Luna*, 525 F.2d 4, 9 (6 Cir. 1975), *certiorari denied*, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976). Since this misrepresen-

tation was not material to the establishment of probable cause, it cannot be a ground for invalidating the search warrant.

The second misrepresentation concerns Hamilton's transcription of his conversation with O'Connor.[8] Discrepancies exist between the notes and the affidavit. The affidavit states:

"* * * Affiant was informed by Agent O'Connor of the Drug Enforcement Administration that Patrick Ryan of Minneapolis informed Agent O'Connor that Michael Causey was dealing in heroin and had heroin in his possession in October and November of 1973. Patrick Ryan then informed Agent O'Connor that Michael Causey had a large quantity of heroin and a large amount of cash close by. Patrick Ryan informed Agent O'Connor that he had purchased narcotics from Michael Causey in the past. Affiant was informed by Agent O'Connor that Patrick Ryan had been in the Causey home."

Hamilton testified that the affidavit contained an accurate recital of what he was told by O'Connor. O'Connor testified: "My best recollection now is reading everything in the notes to Sergeant Hamilton pertaining to Causey."[9] Walbran's notes of the October 31, 1973 conversation with Ryan contain the following support for the statements in the affidavit:

---

**8.** The accuracy of the notes Walbran recorded, which formed the basis for the conversation, was impugned by evidence advanced by defendant. Ryan testified that he told Walbran only that he knew defendant and did not relate anything about defendant's drug activities. Furthermore, Ryan testified that he had seen defendant only once briefly since his arrest in January 1973. Walbran contradicted this testimony and maintained that his notes were accurate. Factors to be weighed in judging Ryan's credibility were his fear of being known as an informer and the lenient sentence he received versus the facts that perjury would revoke his probation and that he had discussed his proposed testimony with his probation officer and sentencing judge. The district court implicitly found that Walbran's testimony was the more credible and that the notes were therefore accurate. We concur with this assessment.

**9.** O'Connor also told Hamilton of information he had received from another informant. The

informant stated that defendant got his heroin from California, brought it back in pound quantities, and made between $7,000 and $15,000 per month from sales. Because the search warrant affidavit only listed Ryan as the source of O'Connor's information, this additional information should not be available to the prosecution to bolster the accuracy of the affidavit. In this posture, the case is analogous to the situation where an officer has information that he fails to put in his affidavit. In such a circumstance, only the contents of the affidavit and not the officer's knowledge can be used to establish probable cause. *State v. Nolting*, Minn., note 4, 254 N.W.2d 340, 344 (filed April 1, 1977); *State v. LaBarre*, 292 Minn. 228, 233, 195 N.W.2d 435, 439 (1972). However, a defendant should be able to utilize the information to evidence an affiant's intent and misrepresentation in attributing information derived from one source to another informant.

(1) Ryan believes that defendant is the big dealer of heroin in south Minneapolis.

(2) Ryan knew defendant had been selling heroin in the past and named two of defendant's probable current customers.

(3) Ryan at one time sold some heroin for defendant.

(4) Ryan stated defendant lives close to Shakopee.

Thus, the statements in the affidavit that defendant had a large quantity of heroin and cash close by and that Ryan had been in the Causey home have shaky support.

Although Hamilton may have had "the correct story in large part," as the district court decided, the misrepresentations do enhance the credibility of his affidavit. The prosecution argues that the misrepresentations are not material. However, because the informant's tip needed corroboration and because the misrepresentations significantly enhance Ryan's information as a corroborating factor, the misrepresentations are material. The district court made no finding with respect to Hamilton's state of mind in connection with these misrepresentations. We must therefore remand for a hearing on that issue, as well as for a determination of Hamilton's state of mind with respect to the misrepresentation concerning Carroll J. Ahlstrand.

Remanded.