STATE of Minnesota, Respondent,

v.

Bruce Phillip LARSON, Appellant.

No. C2–88–2379.

Court of Appeals of Minnesota.

Oct. 24, 1989.

Review Granted Dec. 12, 1989.

C. Paul Jones, State Public Defender, Michael F. Cromett, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, and D. Gerald Wilhelm, Martin County Atty., Fairmont, for respondent.

Heard, considered and decided by WOZNIAK, C.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

After a jury trial, appellant was found guilty of second degree criminal sexual conduct involving his daughter. Appellant alleges that he was convicted based on the trial court's improper admission of his daughter's out-of-court statements and insufficient evidence. We remand.

## FACTS

Following marriage dissolution proceedings, appellant's three-year-old daughter B.L.L. remained in her mother's custody, subject to visitation by appellant. In late April, 1987, B.L.L. complained to her mother of being sore. B.L.L. was taken to a clinic where a medical assistant tested and visually inspected B.L.L. The inspection revealed genital swelling and "redness." Upon questioning of B.L.L. by the medical assistant, B.L.L. stated that appellant had touched her genitals with his own on more than one occasion and that appellant had put B.L.L. on his couch and rubbed her stomach until the skin peeled.

Subsequently, a child protection specialist who interviewed B.L.L. was told that somebody had abused her in her father's living room. B.L.L. indicated this had happened more than once. Also, a psychologist hired by appellant to evaluate B.L.L. indicated there was a "high probability" B.L.L. had been abused, but the psychologist did not identify the alleged abuser.

In August, 1987, B.L.L. began weekly therapy with another psychologist. In late October, B.L.L. indicated she had been abused in her father's bedroom. A late November interview of B.L.L. by a police officer, a child protection specialist and B.L.L.'s mother was videotaped. It included allegations of abuse and demonstrations thereof with anatomically correct dolls. Three weeks later, appellant was charged with criminal sexual conduct.

In mid-June 1988, after an omnibus hearing at which the parties stipulated that B.L.L. was incompetent to testify, the trial court denied appellant's motion to suppress B.L.L.'s out-of-court statements with the exception of the videotape, on which the trial court reserved judgment. In making its determination, the court noted the parties' stipulation regarding competency and granted appellant's motion for a partial continuance based on the state's indication that it did not intend to call the then five-year-old B.L.L. at trial.

After the remainder of the omnibus hearing in late August, the trial court ruled the videotape inadmissible. Appellant then obtained permission to admit the videotape. He also sought and was granted a determination that B.L.L. was competent to testify because he was thinking of calling her as a witness. At trial B.L.L.'s out-of-court statements were presented and the videotape was shown to the jury, but neither party called B.L.L. to testify. A jury found appellant guilty of a single act of second degree criminal sexual conduct.

## ISSUES

1. Did the trial court err in admitting B.L.L.'s out-of-court statements?

2. Is the evidence sufficient to sustain appellant's conviction?

3. Was appellant denied a fair trial by the trial court's refusal to honor appellant's challenge of a juror for cause?

## ANALYSIS

### I.

In Minnesota,

[a]n out-of-court statement made by a child under the age of ten years * * * alleging, explaining, denying, or describing any act of sexual contact or penetration performed with or on the child or any act of physical abuse of the child * * * by another, not otherwise admissible by statute or rule of evidence, is admissible as substantive evidence if:

$$* \quad * \quad * \quad * \quad * \quad *$$

(b) the child * * * either:

(i) testifies at the proceedings; or

(ii) is unavailable as a witness and there is corroborative evidence of the act; * * *

Minn.Stat. § 595.02, subd. 3(b) (1988). Appellant claims that the admission of B.L.L.'s out-of-court statements when B.L.L. was available to testify, but did not do so, violated his right to confrontation and deprived him of due process of law.

◼ Regarding B.L.L.'s failure to testify after being determined competent to do so, we note, first, that when the trial court made its determination, the state failed to move for a continuance to integrate into its case the testimony of B.L.L. required under Minn.Stat. § 595.02, subd. 3(b)(i) for B.L.L.'s out-of-court statements to be admitted and, second, that the state subsequently failed to have B.L.L. testify. These events indicate that the state was not completely aware that the trial court's competency ruling implied that if B.L.L. did not testify, her out-of-court statements could not be properly admitted. Additionally, we note the trial court's statement regarding B.L.L.'s competency determination:

Of course, it is understood that neither party—if the court finds [B.L.L.] is competent, neither party has to call her if they don't wish to do so.

Thus, it appears that the import of the ruling that B.L.L. was competent to testify was not fully explored by the trial court either.

## A. RIGHT TO CONFRONTATION

The Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

*Ohio v. Roberts*, 448 U.S. 56, 62–63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980) (citations omitted); *see also State v. Conklin*, 444 N.W.2d 268, 271 (Minn.1989). However,

the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. But its denial or significant diminution calls into question the ultimate "integrity of the fact-finding process" and requires that the competing interest be closely examined.

*Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973) (internal citations omitted, quoting *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969)). Before trial, appellant moved for

an [o]rder denying the admissibility of the out of court statements of the alleged victim because the admissibility of the statements would violate [appellant's] constitutional right of confrontation in light of the fact that [the state] does not intend to call the alleged victim, [B.L.L.] as a witness because he believes she is incompetent.

Also, denial of appellant's right to confrontation was argued at both omnibus hearings. Therefore, given the constitutional aspects of the issue and despite the fact that appellant did not directly address the confrontation issue for a third time at trial, we believe the issue sufficiently preserved to be addressed on appeal. *See State v. Cash*, 391 N.W.2d 875, 880 (Minn.Ct.App. 1986) (where defendant's objection at omni-

bus hearing to admission of evidence was sustained but defendant failed to object at trial when the evidence was nevertheless introduced, issue of admissibility of the evidence sufficiently preserved for appeal); *State v. Marty*, 376 N.W.2d 515, 517 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 17, 1986) (evidentiary issue properly before this court where defendant objected at state's first unsuccessful attempt to enter evidence but not a later successful attempt).

■ The state argues that B.L.L. was actually unavailable to testify because of "the State's undisguised intention to proceed without ever calling her due to her tender age." This argument on appeal reinforces our concern that neither the prosecutor nor the trial court fully considered how the determination that B.L.L. was competent affected the admissibility of her out-of-court statements under section 595.-02, subd. 3(b). We are unable to discern the basis for B.L.L.'s continued unavailability if, in fact, she was appropriately declared competent to testify.

■ The state also argues that B.L.L. was unavailable to testify because of the stipulation. We cannot agree. As articulated by the prosecutor at the first omnibus hearing, the parties' stipulation was:

*For the purpose of this hearing only* the state is claiming and I believe the defense will agree * * * that the issue of incompetency of the witness which is one of the requirements to be shown in order to admit out-of-court testimony is admitted. The issue before the court * *. * is the reliability of the facts and circumstances surrounding the taking of the statements * * *

(Emphasis added). The limited nature of the parties' stipulation is highlighted by the resulting court order stating:

*That for purposes of this hearing* the parties have assumed that the child victim, who is under 10 years of age, is incompetent to testify in the trial.

Additionally, this interpretation of the stipulation is consistent with that of defense counsel who, at the second omnibus hearing, stated:

I have stipulated *for the purpose of [the first omnibus hearing] and the matter for which we are here* on the statute that the child is incompetent, *both are left open to say the child is competent* for testifying so arguably both of us would bring the child here, me by subpoena and him with or without. There could have to be a competency hearing and *only this court would decide whether the child could testify.*

(Emphasis added). Finally, after the second omnibus hearing, the trial court ruled that

*assuming the unavailability of the victim,* the [appellant's] motion to suppress * * * out of court statements * * * is denied.

(Emphasis added). In the face of such a record, we cannot conclude that the parties' stipulation was for anything other than the omnibus hearings. As such, the stipulation did not extend to trial.

■ Alternatively, the state argues that because "the Confrontation Clause only guarantees an *opportunity* for effective cross examination * * *," *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (emphasis in original)) and because B.L.L. was present and available to testify if appellant called her, the state satisfied its duty of "producing" B.L.L. under *Roberts.* The state's argument regarding production of B.L.L. has superficial appeal, especially in view of the fact that appellant himself sought the determination of competency and had indicated that he might wish to call B.L.L. as a witness. It may be argued that appellant, by his actions, has divested himself of any

right to complain that the state must call this competent witness.

However, we believe if B.L.L. were available, her out-of-court statements could be admitted only if she testified. The obligation to assure presentation of that testimony is on the state. Only by complying with the requirements of Minn.Stat. § 595.02, subd. 3(b) could the state properly fulfill its duty to "prove every ingredient of an offense beyond a reasonable doubt." *Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977). If appellant were required to call B.L.L. in his case in order to cross-examine her, he would discharge the state's burden of meeting the requirements of Minn.Stat. § 595.02 and, in a very real sense, strengthen and further the case against himself. Appellant cannot be placed in a position whereby his election to exercise his constitutional right of cross-examination forces him to waive his right to have the state call its "available" witness(es) against him. *See Lowrey v. State,* 757 S.W.2d 358 (Tex.Cr.App.1988); *Long v. State,* 742 S.W.2d 302 (Tex.Cr.App.1987).[1]

### B. RESIDUAL EXCEPTION 803(24)

■ The state argues that even if B.L.L.'s out-of-court statements were not admissible under the statute, they were admissible under Minn.R.Evid. 803(24)'s residual exception to the hearsay rule. We disagree.[2] To allow admission of the evidence in question under Minn.R.Evid. 803(24) would allow the state to circumvent the legislature's explicit directive that such evidence is admissible only if the victim either testifies or is unavailable to do so. The rule was not enacted for this type of evi-

---

**1.** Appellant alleges that denial of his confrontation clause rights also denies him due process. Logically, if due process requires a fair trial, *State v. Wofford,* 262 Minn. 112, 120, 114 N.W.2d 267, 273 (1962), and a fair trial requires the rights of confrontation and cross-examination, *Lee v. Illinois,* 476 U.S. 530, 540, 106 S.Ct. 2056, 2061–62, 90 L.Ed.2d 514 (1986), the denial of appellant's sixth amendment rights also denied him a fair trial and hence due process.

**2.** Our analysis assumes that Minn.R.Evid. 803(24) is applicable to the instant case. The

comment to the rule states that "[Rule 803(24) ] defines the common law power of the judge to fashion *new* exceptions to the hearsay doctrine." (Emphasis added.) Minn.Stat. § 595.02, subd. 3 "is a legislative enactment of an exception to the hearsay rule." *State v. Carver,* 380 N.W.2d 821, 825 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. March 27, 1986). Arguably, an exception to the hearsay rule involving circumstances already covered by the statute may not be "new" and therefore not be covered by this exception to the hearsay rule.

dentiary arbitrage and to allow it would effectively moot the statute's alternative requirements. *See State v. Campbell*, 299 Or. 633, 640, 705 P.2d 694, 699 (1985) ("Because the legislature specifically restricted hearsay evidence of sexual misconduct, the trial [court] erred in admitting the hearsay testimony under the 'catch all' exception [to the hearsay rule] * * *").

## II.

■ The state claims that even if the out-of-court statements were improperly admitted, the remaining evidence was sufficient to convict appellant. In reviewing a sufficiency of the evidence claim, an appellate court must determine

> whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged * * *. [An appellate court] must take the view of the evidence most favorable to the state and assume the jury believed the state's witnesses and disbelieved any contradictory evidence. * * * If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed.

*State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978) (citations omitted). "Evidence admitted in violation of the confrontation clause is not harmless error unless the evidence in other respects is overwhelming." *State v. Hansen*, 312 N.W.2d 96, 105 (Minn.1981).

Because appellant was denied his right to confront B.L.L.,

> [a]n assessment of harmlessness cannot include consideration of whether the witness's testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence.

*Coy v. Iowa*, ── U.S. ──, ──, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988). Here

the parties agree that if requirements of Minn.Stat. § 595.02, subd. 3(b) are not met, the only admissible evidence is B.L.L.'s statements to the medical assistant which are admissible as statements made for the purpose of medical diagnosis, *see* Minn.R. Evid. 803(4). While B.L.L.'s statements to the medical assistant named appellant as the perpetrator,

> [s]uch statements regarding who caused [the] injuries generally are not admissible because they are irrelevant to medical diagnosis and treatment.

*State v. Bellotti*, 383 N.W.2d 308, 312 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. April 24, 1986) (citation omitted).

In *State v. Dana*, 422 N.W.2d 246, 250 (Minn.1988), and *State v. Bellotti*, 383 N.W.2d at 312, admission of the name of the alleged perpetrator through medical records was held to be harmless error. However, in neither *Dana* nor *Bellotti* was the identity of the alleged abuser found to be at issue. *See Dana*, 422 N.W.2d at 250; *Bellotti*, 383 N.W.2d at 312. Further, in both cases the other evidence was substantial. *See Dana*, 422 N.W.2d at 247–48 (warranted search of premises where alleged abuse took place revealed physical evidence and photographs corroborating victims' stories); *Bellotti*, 383 N.W.2d at 311 (defendant confesses to "touching" victims and states that he "couldn't explain his actions"). In this case, because of certain references in the record to an unidentified person, "Chiney," the identity of the alleged abuser is not completely certain. Additionally, upon exclusion of the contested out-of-court statements, the remaining evidence in this case is considerably weaker than that in either *Dana* or *Bellotti*. Significantly, exclusion of the out-of-court statements eliminates any direct reference to appellant as the abuser. We are disinclined, on the strength of the record before us, to extend the rationale of the *Dana* and *Bellotti* cases to the extent necessary to affirm this conviction.

Our hesitancy to affirm this conviction has a mirror image, however. In view of the record before us, and especially in view of what we conclude may be a flawed com-

petency determination, we are equally hesitant to reverse and remand for a new trial. Mindful of the supreme court's admonition in *State v. Burns*, 394 N.W.2d 495, 497 (Minn.1986) that "a new trial is not necessary if some other lesser remedy * * * would be more appropriate," we re-examine that portion of the record which is the genesis for both the error and the insufficient evidence perceived by this court earlier in this opinion.

■ Under the dichotomy of Minn.Stat. § 595.02, subd. 3(b)(i) and (ii), B.L.L.'s out-of-court statements were admissible only if she either testified or was unavailable to do so. Here, the trial court's ruling that B.L.L. was competent removed her from the "unavailable" category, *see* Minn.Stat. § 595.02, subd. 3 ("An unavailable witness includes an incompetent witness") and thus made her testimony indispensable for the admission of her out-of-court statements. The trial court's declaration that "neither party * * * has to call [B.L.L.] if they don't wish to do so" suggests that it may not have considered that once B.L.L. was found competent to testify, her out-of-court statements could be received into evidence only if, in fact, she did testify. Such a consideration is implicit in a competency determination in a case where admission of evidence under section 595.02, subd. 3 is also involved.[3] We cannot be certain what the trial court's ruling regarding B.L.L.'s competency would have been had it focused on the statutory effect that ruling would have had on the prerequisites for admission of her out-of-court statements. Our uncertainty as to the range of factors considered by the trial court when it answered the question "Is B.L.L. competent?" requires a remand. Our attempt to comply with the dictates of *Burns* convinces us that the remand should not be for a new trial, but for a clarification by the trial court of the basis for its competency determination and a demonstration of its recognition of the impact of a finding of competency in light of Minn.Stat. § 595.02, subd. 3(b).[4]

### III.

■ Finally, appellant argues that, because the trial court erred in denying one of his challenges of a juror for cause, he was "deprived of his right to a fair trial."

To successfully appeal based on juror bias,

> appellant must show that the challenged juror was subject to challenge for cause, that actual prejudice resulted from the failure to dismiss, and that appropriate objection was made by appellant.

*State v. Stufflebean*, 329 N.W.2d 314, 317 (Minn.1983). Additionally,

> [t]he [trial] judge, * * * should be given deference in determining if a juror should be removed for cause.

*State v. Graham*, 371 N.W.2d 204, 206 (Minn.1985).

Because the challenged juror indicated that her strong feelings regarding sex abuse cases could possibly affect her ap-

---

**3.** We are aware that under Minn.Stat. § 595.02, subd. 1(*1*) (1988),

> [a] child under ten years of age is a competent witness unless the court finds that the child lacks the capacity to remember or to relate truthfully facts respecting which the child is examined.

However, because protection of a child sex abuse victim from the trauma of testimony has been recognized as an important public policy, *see* Minn.Stat. § 595.02, subd. 4 (1988) (provision for video/close circuit testimony of a child victim where normal testimonial circumstances might "psychologically traumatize the witness so as to render the witness unavailable") and *Coy v. Iowa*, —— U.S. ——, ——, 108 S.Ct. 2798, 2805, 101 L.Ed.2d 857 (O'Connor, J. concurring) (protection of a child sex abuse victim from the trauma of testimony is "an important public

policy" and a "compelling state interest"), we believe that the testimonial ramifications on a child of determining that child to be competent to testify must also be considered in determining whether he or she is actually competent to testify.

**4.** On remand the trial court should re-enunciate and clarify the basis for its original competency determination. If that re-enunciation and clarification demonstrates actual consideration of the testimonial ramifications on the child of the competency determination, the original determination should stand and a new trial be granted. If the re-enunciation and clarification demonstrates that the competency determination was made without such consideration, the trial court should then re-evaluate its original competency determination.

proach to the case, she was challenged for cause under Minn.R.Crim.P. 26.02, subd. 5(1) which allows a challenge for:

> [t]he existence of a state of mind on the part of the juror, in reference to the case or to either party, which satisfies the court that the juror cannot try the case impartially and without prejudice to the substantial rights of the party challenging.

Upon voir dire, the juror indicated that she "would try" to be unbiased, that she had success doing so in the past and that she did not have "any difficulty with the concept that the purpose of a juror is to determine whether or not there was abuse." However, she subsequently stated that her sympathy for abuse victims "may" get in the way of impartially determining whether abuse had occurred, but that she would "try to set it aside." The trial court then denied appellant's challenge of the juror for cause.

> It has been stated that
>
> [t]he test of an impartial juror is * * * that he "can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

*State v. Andrews*, 282 Minn. 386, 394, 165 N.W.2d 528, 534 (1969) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961)). More recently, the supreme court has indicated:

> If * * * the jurors indicate their *intention to set aside* any preconceived notions, and demonstrate to the satisfaction of the trial judge that they are able to do so, [an appellate court] will not lightly substitute its own judgment.

*State v. Howard*, 324 N.W.2d 216, 220 (Minn.1982) (emphasis added). Additionally, this court has held:

> A juror must *simply undertake to try the case fairly*, and the trial judge, being in the best position to observe the demeanor of the prospective juror, is to be given deference in determining whether the juror should be removed for cause.

*State v. Alladin*, 408 N.W.2d 642, 650 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Aug. 12, 1987) (emphasis added). Considering the juror's indication that she intended to put her feelings aside and that she had successfully done so in the past, we conclude that the juror had the requisite intent and ability to be impartial required by *Andrews* and *Alladin*. Thus, the trial court did not abuse its discretion in denying appellant's challenge of the juror for cause. In view of our determination that the trial court did not err in refusing to dismiss the juror, we need not address the issue of whether actual prejudice resulted from the trial court's failure to dismiss the juror.

## DECISION

Appellant's Sixth Amendment right to confront his accuser was violated by the trial court's admission of B.L.L.'s out-of-court statements where B.L.L. neither testified nor was unavailable to testify. This constitutional defect was not remedied by the fact that appellant could have called B.L.L. to testify, as this fact put appellant in a quandary by requiring him to choose between his right to have the state prove its case beyond a reasonable doubt and his right to confront his accuser. Because the excision of B.L.L.'s out-of-court statements, required for compliance with Minn. Stat. § 595.02, subd. 3, reduces the record to a level which does not support the conviction, and because of the trial court's and the parties' failure to focus on implications of the competency determination, we must remand for a re-enunciation of the basis for the trial court's determination that B.L.L. was competent to testify.

Remanded for further proceedings not inconsistent with this opinion.

RANDALL, Judge, dissenting.

I respectfully dissent. I agree with the majority on issue one wherein they find that when a child witness found competent and available to testify is not called to the stand, it is plain error to admit her hearsay communications as substantive evidence. I agree with the majority that, absent the improperly admitted hearsay, there was insufficient evidence to sustain appellant's conviction. There was not "other overwhelming evidence of guilt" here, and thus

I agree with the majority's conclusion that, due to clear error revolving around a constitution defect, relief for appellant is mandated. I further agree with the majority on its confrontation analysis and its *Dana* and *Bellotti* analysis. I also agree with the majority's handling of issue three relating to the challenge to a juror for cause. However, I strongly disagree with the majority's conclusion that the relief called for is not reversal and remand for a new trial, but a pure remand to allow the trial court to reconsider and clarify an *unappealed* issue, namely the pretrial determination that the child witness was competent to testify. The majority mandates the trial court to "clarify" and "reenunciate" whether he had in mind Minn.Stat. § 595.02, subd. 3 when he ruled B.L.L. competent to testify.

It is hard to get a handle on what the majority is doing because I find no precedent in the State of Minnesota or elsewhere for a straight remand[1] to a trial judge in a felony case to "clarify" a pretrial ruling that resulted in, as the majority and I agree, the later improper admission at trial of evidence that cannot be handled by the "harmless error" doctrine.

I emphasize that the trial court conducted a proper pretrial competency hearing pursuant to a timely request by one of the parties and found B.L.L. competent to testify (this competency hearing was held on August 30, 1988, and B.L.L. was five years and three months old). The state *did not* seek relief from that August 30th pretrial hearing and claim that the trial court had erroneously found her competent to testify, and that the ruling would have a critical impact on the trial. The state had that right at that time to challenge this pretrial competency ruling pursuant to the procedure open to them under Minn.R.Crim.P. 28.04. The state did not, and all applicable time limits on pretrial rulings by the state have long since expired.

Thus, the *competency of B.L.L. to testify is not an issue* in the process of analysis of this case. She was ruled competent at a proper hearing timely motioned. The finding of competency was not appealed and is not before us. *Arndt v. American Family Insurance Co.*, 394 N.W.2d 791, 793 (Minn. 1986) (Minn.R.Civ.App.P. 106 bars consideration of issues not raised by filing notice of review); *see also* Minn.R.Crim.P. 28.01, subd. 2 (rules of civil appellate procedure apply in criminal cases except as otherwise provided). In fact, the majority *relies on the trial court's finding of competency* to support its conclusion that the admission of B.L.L.'s hearsay statements was plain and substantial error! Yet, having said that, the majority goes on with strained reasoning to conclude that they found "what may be a flawed competency hearing." The majority gives as its reason that they have "uncertainty as to the range of factors considered by the trial court when it answered the question, 'Is B.L.L. competent?'" An examination of settled law on the criteria for the competency of child witnesses discloses one, and only one, terse and succinct statute:

> A child under ten years of age is a competent witness unless the court finds that the child lacks the capacity to remember or to relate truthfully facts respecting which the child is examined. A child describing any act or event may use language appropriate for a child of that age.

Minn.Stat. 595.02, subd. 1(*l*).

The only factors a trial court *can* consider are the child's ability to remember or relate truthfully facts on which the child is questioned. The August 30th finding of competency was *not* challenged by the prosecution before trial, is not challenged by the defendant in his postconviction appeal, and thus becomes the law of the case. The majority discusses § 595.02, subd. 1(*l*), the controlling statute, in terms of "public policy" and the effect that testimonial circumstances might have on a witness. The majority's citation of Minn.Stat. § 595.02,

---

1. This is not a postconviction hearing. This is a straight appeal on claimed errors of law which is a defendant's right in a criminal case. In a criminal case a defendant has no obligation to make post-trial motions to correct errors, as is required in a civil case, in order not to limit the appeal to sufficiency of the evidence.

subd. 4 (1988) and Justice O'Connor's concurrence in *Coy v. Iowa*, — U.S. —, —, 108 S.Ct. 2798, 2805, 101 L.Ed.2d 857 (1988) to suggest that public policy supports their "testimonial ramifications" tint on Minn.Stat. § 595.02, subd. 3 is out of context. Neither § 595.02, subd. 4 nor Justice O'Connor's remarks in *Coy* address a competency determination. Both presume that the child witness has already been found competent and speak to whether or not the child witness may avoid a physical confrontation (e.g. courtroom shields, video taping, et cetera) with the accused during the child witness's testimony.

The majority does not find that, although competency was not appealed, their review of the record establishes that B.L.L. lacked the capacity to remember and relate facts truthfully. Instead, the issue the majority wants addressed on remand is what would the trial court's ruling on B.L.L.'s competency have been had the trial court realized that by finding B.L.L. competent the state could not have B.L.L.'s out-of-court statements admitted as substantive evidence unless B.L.L. testified at trial pursuant to Minn.Stat. § 595.02, subd. 3(b)(i). In plain English, the majority criticizes the trial court and remands for clarification because the trial court did not set out in its finding of competency that it had considered what possible trial tactics and what possible production of witnesses the defense and prosecution would have to explore depending on which way the trial court's ruling on competency went. I suggest it is the job *only* of defense counsel and prosecutor to choose trial tactics, including the production of evidence and witnesses, that they deem in their best judgment to serve their client. It is *not* for a trial judge, faced with an important pretrial ruling, to consider whether the outcome may or may not harm the defendant's case or the prosecution's case. However, that is implicit in the criticism leveled by the majority at the trial court.

On types of issues that come up for pretrial rulings, e.g., suppression of evidence, admission of confessions, competency, a trial court's only protection from outside pressure and criticism is the ability to decide the issue on the law and the facts. The majority cannot bypass or escape this issue. Their analysis boldly states that they want the trial court to demonstrate "its recognition of the impact of a finding of competency in light of Minn.Stat. § 595.02, subd. 3(b)." The majority further states:

It appears that the import of the ruling that B.L.L. was competent to testify was not fully explored by the trial court.

The majority's remand is foreign to the simple dictates of the controlling statute § 595.02, subd. 1(*l*).

The majority attempts to rationalize a straight "remand" without a reversal by relying on *State v. Burns*, 394 N.W.2d 495, 497 (Minn.1986). Even a cursory reading of *Burns* discloses that the facts and holding of *Burns* are inapposite to this case. In *Burns*, the supreme court addressed the trial court's failure to hold the requisite § 595.02 pretrial hearing concerning out-of-court statements by child sex abuse victims. The holding of *Burns* was that the defendant did not timely object to the lack of a hearing; and further that the record clearly contained enough evidence of guilt so that the *lack of a hearing*, coupled with the failure to object, was harmless error. The pure holding of *Burns* is that the lack of timely objection and a harmless error analysis combined to uphold a conviction. On our facts, a competency hearing was held. No one appealed the result of the hearing, and thus the finding of competency becomes the law of the case. In addition, the majority does not analyze this case on the basis that the improperly admitted statements were harmless error, but emphasize, as I do, that admitting the statements was clear and substantial error, as the other evidence was insufficient to sustain the conviction. The supreme court in *Burns* did not speak to what they would have done had they found the failure to conduct the pretrial hearing to be a constitutional defect, and that it could not be considered harmless error because the other evidence left could not sustain the conviction.

The majority attempts to slide under *Burns* by taking a statement from *Burns* which indicates that an award of a new trial is not necessary if some other lesser remedy would be more appropriate. *Id.* at 497. The *Burns* court set out two examples; *State v. Causey*, 257 N.W.2d 288 (Minn.1977) and *Doan v. State*, 290 Minn. 105, 186 N.W.2d 518 (1971). An examination of both cases indicates no applicability to the facts of this case. *Causey* involved a timely challenge to the propriety of a search warrant. The challenge was overruled by the trial court and the state was allowed to admit evidence discovered in the search. Based on this evidence, the defendant was convicted. On appeal, the defendant argued that his motion to suppress was erroneously denied. The appeal turned on the sufficiency and accuracy of affidavits submitted in support of the request for a warrant. The supreme court remanded the case to the trial court for a post-trial determination of the state of mind of the government agent who made misrepresentations in the affidavit supporting the warrant. Thus, in *Causey*, the issue of the trial court's pretrial suppression order was properly before the court because an objection was noted to the admission of the evidence before trial, and the trial court's ruling on the objection was appealed.

Here, we have a pretrial competency hearing, properly conducted, from which no appeal was taken by the state. Nevertheless, the majority sends this case back to the trial court to reconsider its competency ruling in light of factors *not contained in the statute governing the competency of child witnesses.*

The next case which the *Burns* court mentioned in passing as indicating that a remand may be appropriate, depending on the facts, is *Doan. Doan* was a 1971 case that preceded the modern rules of criminal procedure (which took effect on July 1, 1975) which now control pretrial hearings on admission and suppression of evidence through Minn.R.Crim.P. 11. In *Doan*, despite defendant's contention that his confessions resulted from coercion and intimidation by the investigating officers, defen-

dant's statements were received in evidence over timely objection. The issue in *Doan* was whether there had been the premodern rule of criminal procedure separate hearing on the issue of voluntariness. *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The supreme court simply found that based on the record and defendant's timely objection to the admission of his inculpatory statements that a question remained as to whether the *Jackson* standards had been fairly met. Thus, there was a remand to the trial court to ensure that the defendant's confession had been voluntarily obtained. Again, the essential elements of *Doan* are that a timely objection to the admission of evidence was made, and the supreme court, not sure, that the proper pretrial hearing had been held, and, noting the timely objection, remanded for a full hearing on defendant's contentions.

Although the analysis of both the majority and this dissent is complex, the majority's decision is clear and crystalizes the problem. The majority found the appellant's sixth amendment right to confront and cross-examine his accusers was violated. The majority finds that this constitutional defect could not be remedied by a harmless error analysis. The majority finds that with the suppression of the improperly admitted hearsay statements, the record is insufficient to support the conviction and thus the error is not harmless and mandates relief. But the relief granted is a remand for reconsideration of the child witness's competency, and the majority premises that remand, not on the statute controlling how a trial court determines competency of child witnesses, but on a demand that the trial court second guess its pretrial ruling of competency based on the knowledge that should the competency ruling stand, he must grant appellant a new trial.

The majority tips off the trial judge that should he clarify the unappealed competency ruling made over one year ago (August 30, 1988) and now change his mind and rule himself in error and find that B.L.L. was incompetent, the conviction will stand be-

cause the dictates of § 595.02, subd. 3(b)(ii) will now be met. I believe such a remand is unprecedented and puts the trial judge in an untenable position. He is told that he has erred, not in finding B.L.L. competent, but in allowing her out-of-court statements to be heard by the jury when the state did not call her as a witness. He is then told that his error in allowing in those hearsay statements is clear and substantial error and will mandate a new trial for the defendant unless he reconsiders and clarifies that ruling of competency, and reverses himself on it. Assume the trial court, at the original August 30th hearing or on remand, finds B.L.L., pursuant to the controlling statute, able to relate and remember facts, but specifically enters a finding of incompetency so that the state can use her out-of-court statements as substantive evidence pursuant to § 595.02, subd. 3(b)(ii). The *defendant has now been improperly denied access to a witness.* (The defendant in a criminal case has as much right to subpoena the victim as a witness as does the prosecution.) The defense in this type of case might well hold off its final decision whether to subpoena the child to testify, if the state does not, depending on how it views the strengths of the state's case, and other intangibles and subjective elements that are best left to the discretion of the trial attorney. Suppose, mid-trial, he now states as part of the defense case-in-chief an intention to subpoena the victim and the trial court says, "sorry, but you can't, I ruled her incompetent." The defense attorney says, "but on the statutory criteria of her ability to relate and remember, you found she had passed." The trial court replies, "but now I am told I have to factor into the finding of competency a recognition that how I rule will affect the state's production of proof." This is precisely where the majority's analysis is heading the trial court.

The majority's decision creates a series of hydra-headed issues. First, if the trial court on remand clarifies the competency ruling, decides he was wrong, and rules B.L.L. retroactively incompetent, does the defendant have standing to appeal that? The defendant did not place the pretrial ruling of competency as an issue before this court as part of his post-trial appeal. Is the trial court's "clarification" order appealable?

Second, if, as I suspect might happen, the trial court sticks by its August 30 competency ruling that B.L.L. was able to relate and remember, and that he does not intend to factor into § 595.02, subd. 1($l$) how competency might affect the trial tactics of the prosecution and the defense, does the state now get another appeal to this court challenging the trial court's clarification? I assume the trial judge felt he was right when he first ruled B.L.L. competent. I assume he applied only the criteria set out in the statute, I can think of none other that he could.

The concept of a trial court being asked to acknowledge (speculate) the effect of the evidence either side may have to produce, depending on a pretrial ruling, is dangerous when examined in the light of day. Trial decisions by attorneys as to what witnesses to call or to have on their witness list but not call can and may properly change from day to day and hour to hour in a trial. A defense attorney or a prosecutor may, at a pretrial hearing, honestly indicate a predisposition to put this witness or that defendant on the stand or to submit this document and not that one, and yet each attorney reserves an absolute right to change his mind depending on the progress of the trial to date. For example, in this case the state may have had an announced pretrial disposition not to call B.L.L. as a witness, even though they knew she was available. The state could have properly and honorably changed its mind and put her on the stand. The defendant may have had an announced honest pretrial disposition not to subpoena her has a witness if the state did not. The defense attorney could have properly changed his mind at trial and issued a subpoena for her attendance. The burden to a trial court at a pretrial hearing speculating as to what the import of ruling on any issue will do to a party's trial tactics is so intolerable it should not be imposed. Trial judges should be allowed to make pretrial rulings without

having to engage in such speculation, and let the correctness of those rulings be answered on appeal.

For all the above reasons, since I agree with the majority that there was clear and substantial error, I find the only honest solution is a reversal and a remand for a new trial.

The state still controls future production of witnesses and its ability to comply with the dictates of § 595.02. First of all, at the second trial, either party can appropriately request the trial court for a second pretrial competency hearing. B.L.L. was born on May 30, 1983, and thus is now approximately six and one-half years old. At that age, emotional maturity and the mental capacity of child witnesses to remember and relate truthfully in their own language facts that happened to them may change from year to year and even over shorter spans. The fact that B.L.L. was ruled competent on August 30, 1988, is not res judicata as to a new hearing before a second trial. She is not, and never has been, adjudicated legally incompetent, and her competency at a second trial is only subject to the plain language of § 595.02, subd. 1($l$).

Following the second competency hearing, the state has the controlling statute § 595.02 squarely in front of it. Should she again be found competent to testify, the state will be faced with the simple trial decision of whether to put her on the stand and comply with § 595.02, subd. 3(b)(i) or attempt to make its case against defendant without her out-of-court statements, but with whatever other admissible evidence it has. On the other hand, should she now be found incompetent to testify, the state can attempt to make its case in compliance with the dictates of § 595.02, subd. 3(b)(ii).

This, to me, is a better result and in compliance with an accused's right to a fair trial and a fair appeal. With the majority's analysis, there is not so subtle pressure on the trial court to clarify an unappealed pretrial competency hearing, and reverse itself knowing then that the conviction will stand. My analysis leads to a second trial where again an objective competency hearing could be requested, and, following that decision, each party is free to plan trial strategy and produce the witnesses it deems proper.

I strongly dissent and would reverse and remand for a new trial for all the reasons stated above.